FILED
IN CLERK'S OFFICE
DISTRICT COURT E D N Y

★ MAY 07 2013 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MARCIN CZERNIEWSKA and CAROLINA
ZUNIGA-CZERNIEWSKA,

MEMORANDUM AND ORDER

          Plaintiffs,

CV 12-4742

    -against-

(Wexler, J.)

COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPARTMENT, COMMISSIONER
RICHARD DORMER, ACTING COMMISSIONER
EDWARD WEBBER, P.O. ANDREW DEROSE,
SGT. MICHAEL FITZHARRIS, OFFICERS A-Z,

         Defendants.
---------------------------------------------------------------X
APPEARANCES

    LAW OFFICERS OF SCOTT K. TURNER, ESQ.
    BY: SCOTT K. TURNER, ESQ.
    Attorneys for Plaintiffs
    557 Grand Concourse, Suite 3-154
    Bronx, New York 10541

    DENNIS M. BROWN, ESQ., ACTING SUFFOLK COUNTY ATTORNEY
    BY: SUSAN A. FLYNN, ESQ, ASSISTANT COUNTY ATTORNEY
    Attorney for Defendants
    H. Lee Dennison Building
    100 Veterans Memorial Highway
    P.O. Box 6100
    Hauppauge, New York 11788

WEXLER, District Judge

    This is a civil rights lawsuit commenced by Plaintiffs Marcin Czerniewska and Carolina Zuniga-Czerniewska (collectively "Plaintiffs") arising out of an incident that took place at Plaintiffs' home on September 23, 2011. Plaintiffs name as Defendants the County of Suffolk,

the Suffolk County Police Department (the "Police Department"), former Suffolk County Police Commissioner Richard Dormer ("Dormer"), current acting Suffolk County Police Commissioner Edward Webber ("Webber"), Police Officer Andrew DeRose ("Officer DeRose"), Suffolk County Police Sargent Michael Fitzharris ("Sargent Fitzharris") and unnamed "Officers A through Z". Plaintiffs set forth federal civil rights claims pursuant to 42 U.S.C. §§ 1981,1983 and 1985, as well as state law claims. Presently before the court is the motion of all Defendants for partial dismissal of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, Defendants seek dismissal of all claims against Dormer, Webber and Fitzharris, as well as all claims of conspiracy. For the reasons that follow the motion to dismiss is granted.

## BACKGROUND

I. Factual Background

The facts set forth below are drawn from Plaintiffs' complaint. The facts are construed in the light most favorable to Plaintiff, the non-moving party, and assumed at this juncture to be true.

A. Incident of September 23, 2011

On September 23, 2011, Plaintiff Marcin Czerniewska placed an emergency 911 telephone call requesting that an ambulance be sent to his home. The call was made because Mr. Czerniewska believed that his wife had taken an overdose of ibuprofen. When Mr. Czerniewska realized that he was mistaken about the overdose, he place a second emergency telephone call, explaining his mistake and stating that there was no need for an ambulance. Plaintiffs allege that despite the cancellation of the call for help, an ambulance and approximately five Suffolk County

2

police officers and supervisors "converged upon" the Czerniewska residence. Mr. Czerniewska alleges that he greeted the responders at the front door and advised them of his mistake. He states that he assured the officers that there was no need for emergency assistance. He states that he also advised the responders that his wife, Plaintiff Carolina Zuniga-Czerniewska had recently given birth and spoke no English.

The complaint alleges that contrary to Mr. Czerniewska's instructions, the responding personnel proceeded to barge inside the Czerniewska residence, take control of the house and ordered Mr. Czerniewska to remain in a side parlor. Upon the officers' arrival, Mrs. Zuniga-Czerniewska went into her bedroom to dress and locked the door. Defendant Officer DeRose is alleged to have approached the bedroom demanding entry, speaking only in English. The officers declined Mr. Czerniewska's offer to translate for his wife, instead ordering that he remain in the side parlor. Officer DeRose is alleged to have thereafter forced his way into the bedroom and to have used violent physical force to drag Mrs. Zuniga-Czerniewska into the hallway of her home. Officer DeRose is alleged to have continued to act violently and without provocation with respect to Mrs. Zuniga-Czerniewska by "slamming" her head in to the wall, "grabbing her again by the neck and pointing a gun directly at her face." In fear for her life, Mrs. Zuniga-Czerniewska is alleged to have grabbed a "small kitchen knife" and to have "waved it in front of her in a defensive position." Officer DeRose responded by shooting Mrs. Zuniga-Czerniewska with a taser, causing her to fall face first onto the kitchen floor. Officer DeRose is then alleged to have "launched his body on top of her," tearing stitches sewn in after childbirth. Plaintiffs allege that throughout this entire ordeal, no responder attempted to communicate with Plaintiffs in Spanish.

3

After her fall, Mrs. Zuniga-Czerniewska was arrested and transferred, in police custody, to Stony Brook Hospital, where she was chained to her bed. Officers are alleged to have strip searched Mrs. Zuniga-Czerniewska while she in her hospital bed, to have photographed her and told her that she was a member of a gang. At no time during this procedure was Mrs. Zuniga-Czerniewska provided with a Spanish interpreter. Meanwhile, officers searched the Czerniewska home, and made repeated threats to Mr. Czerniewska regarding the allegedly illegal immigration status of his wife. Such threats are alleged to have been made despite the fact that the officers located (during a warrantless search) Mrs. Zuniga-Czerniewska's valid immigration documents. After her release from the hospital, Plaintiffs allege that Mrs. Zuniga-Czerniewska was improperly charged with penal code violations.[1]

B.  Allegations as to Policy of Suffolk County Government and Law Enforcement

In addition to allegations as to the events at Plaintiffs' home, the complaint sets forth allegations regarding an alleged pattern and practice of hostility toward non-English speaking persons. The complaint makes reference to various facts and actions taken from 2000 through 2011, none of which are directly related to the incident at the Plaintiffs' home. Specifically, the complaint makes the following allegations:

- in 2000 the United States Department of Justice Community Relations Service tried to assist Suffolk County in developing solutions to resolve racial tensions after an assault on day laborers;

- in 2001, the Suffolk County Legislature sought to pass legislation punishing contractors who hired undocumented workers;

---

[1] The complaint does not allege the outcome of any criminal court proceedings taken with respect to the incident alleged therein.

4

- in 2005, then-County Executive Steve Levy used his office to target and evict Latino residents and implemented policies requiring police to inquire as to immigration status of non-English speaking arrestees;

- in 2007, Suffolk County Legislator Elie Mystal made a comment referring to shooting day laborers;

- in 2008 the New York Times ran a story relating to anti-immigrant sentiment in Suffolk County;

- in 2009, the United States Department of Justice and the United States Attorneys' Office opened up a special investigation into hate crimes in Suffolk County and the practices of the County Police Department;

- in 2009, the Southern Poverty Law Center, an Alabama civil rights group, investigated racial hostility toward minorities in Suffolk County and released a report detailing hostility toward non-English speaking residents;

- in 2011 the United States Department of Justice and the United States Attorneys' Office initiated a joint investigation of the Suffolk County Police Department to address concerns regarding its policies and procedures;

- in 2011, Police Commissioner Dormer responded to the 2011 investigation issuing a press release denying claims of cultural insensitivity and touting his department as "a model for other municipalities . . . allowing communication with all members of the community."

II. Plaintiffs' Complaint

Plaintiffs' complaint alleges Federal civil rights violations pursuant to 42 U.S.C. §§ 1981, 1983 and 1985 as well as state law claims.[2] Specifically, Plaintiffs allege Section 1983 claims against the individual Defendants for the alleged unlawful seizure of Plaintiffs and the use of excessive force as to Mrs. Zuniga-Czerniewska. Plaintiffs allege a Section 1983 claim against Suffolk County on the ground that it pursues a municipal policy of acting unlawfully against non-Spanish speaking residents of Suffolk County, without consideration of factual circumstances,

---

[2] Plaintiffs also alleges a claim pursuant to 42 U.S.C. §1988, but that is simply a claim for statutory attorneys' fees and is not relevant hereto.

degree or nature of conduct and without regard for the Constitutional rights of those individuals. Plaintiffs also allege a Section 1985 claim of conspiracy against all Defendants stating that they conspired to violate Plaintiffs' rights by agreeing to treat them differently from English-speaking residents of Suffolk County and to subject to unlawful seizure and the use of excessive force.

Plaintiffs allege parallel claims under the new York State Constitution as well as state common law claims for assault, battery, intentional and negligent infliction of emotional harm and conspiracy

III.   The Motion to Dismiss

Defendants seek dismissal of all claims alleged against Defendants Dormer, Webber and Fitzharris on the ground that the complaint contains no allegations of personal involvement of these individuals in the alleged deprivation of Plaintiffs' civil rights. Noting that Defendants are alleged to have been working within the scope of their employment as Suffolk County employees in connection with the incidents alleged in the complaint, any claim of conspiracy is argued to be barred by the intracorporate conspiracy doctrine. Plaintiffs oppose the motion to dismiss Dormer, Webber and Fitzharris on the ground that they can be held responsible as supervisors of the officers who took part in the events forming the basis of the complaint. Plaintiffs oppose dismissal of the conspiracy claims on the ground that Defendants were acting in their own interests, and not as County employees, when responding to the Czerniewska home. After setting forth applicable legal principles, the court will turn to the merits of the motion.

## DISCUSSION

I. General Legal Principles

    A. Standards on Motion to Dismiss

In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court rejected the "oft quoted" standard set forth in Conley v. Gibson, 355 U.S. 41, 78 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46. The court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim of relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974.

The "plausibility" language used by the Supreme Court in Bell Atlantic has not been interpreted by the Second Circuit to require a "universal standard of heightened fact pleading," but to require a complaint to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 158 (2d Cir. 2007) (emphasis in original). Further, courts have noted that while heightened factual pleading is not the new order of the day, Bell Atlantic holds that a "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above a speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." Williams v. Berkshire Fin. Grp. Inc., 491 F. Supp.2d 320, 324 (E.D.N.Y. 2007), quoting, Bell Atlantic Corp., 127 S. Ct. at 1959.

In the context of a motion to dismiss, this court must, as always, assume that all allegations set forth in the complaint are true and draw inferences in favor of the non-moving party. Watts v. Services for the Underserved, 2007 WL 1651852*2 (E.D.N.Y. June 6, 2007). The

7

court must ensure, however, that the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974.

II.  Motion to Dismiss Claims Against Individuals

    A.  Legal Principles

It is well-settled that to hold a defendant individually liable for a civil rights violation a plaintiff must plausibly allege some personal involvement in the constitutional violation. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Leshore v. Commissioner of Long Beach Police Department, 2012 WL 1032643 * 6 (E.D.N.Y. 2012). Personal involvement necessary to impose individual liability includes situations where the defendant: (1) directly participated in the infarction; (2) failed to remedy the wrong after learning of the constitutional violation; (3) created the policy or custom under which the unconstitutional practice occurred or allowed such custom or policy to continue or, (4) was grossly negligent in managing subordinates who caused the unlawful event. Wright, 21 F.3d at 501; Hussey v. New York State Dept. of Law/Office of Atty. General, 2013 WL 1170719 *14 n.6 (E.D.N.Y. 2013). A supervisory official cannot be held liable simply because he held a position of authority. Leshore, 2012 WL 1032643 *6; see, e.g., Edwards v. Jericho Union Free School District, 2012 WL 5817281 *11 (E.D.N.Y. 2012) (defendant's position as district superintendent insufficient basis to impose liability).

    B.  Disposition of the Motion

Defendants move to dismiss the claims against Dormer, Webber and Fitzharris. While Dormer is conceded to have held the title of Suffolk County Police Commissioner at the time of the events forming the basis of the complaint, Defendants submit an affidavit indicating that

8

Webber did not assume that position until after those events. Plaintiffs dispute the document relied upon by Defendants to establish Dormer and Webber's employment status. They also argue that all named individuals may be held liable as supervisors responsible for the acts of those who actually responded to the emergency telephone call to Plaintiffs' home.

The court has reviewed the allegations of the complaint as set forth above and holds that, whatever their particular positions in September of 2011, Plaintiffs fail to allege the personal involvement necessary to state a claim against any of the moving Defendants. Dormer, Webber and Fitzharris are named only as supervisory entities, and there are no allegations of their personal involvement in the incident at Plaintiffs' home. Nor do Plaintiffs link any of the municipal liability allegations ranging from 2000 through 2011 to the acts of the individual defendants seeking dismissal. Plaintiffs therefore fail to sate a civil rights claim against any of these Defendants. To the extent that Plaintiffs seek to name these individuals in their "official capacities," such claims are similarly dismissed as they state no claim beyond that stated against the municipal entity. Leshore, 2012 WL 1032643 *4 n. 3.

III.   Motion to Dismiss Conspiracy Claims

  A.   Legal Principles

Under the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are deemed to be incapable of engaging in a conspiracy together. Mendoza v. County of Nassau, 2012 WL 4490539 *8 (E.D.N.Y. 2012); Finch v. New York, 2012 WL 2866253 *7 (S.D.N.Y. 2012); Nassau County Employee ""L" v. County of Nassau, 345 F. Supp.2d 293, 304 (E.D.N.Y. 2004), The doctrine applies to the conduct of corporations as well as to that of municipal entities and their employees. Mendoza, 2012 WL 4490539 *8 ("officers,

9

agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other") (citation omitted); see Finch, 2012 WL 2866253 *7. Thus, the doctrine applies to bar not only state law claims of conspiracy, but also claims alleged pursuant to Section 1985, where the alleged conspirators are all employed by the same municipal entity. See Mendoza, 2012 WL 4490539 *8. An exception to this doctrine applies where it can be shown that the individuals alleged to have conspired with the employer-entity have acted in pursuance of "personal interests wholly separate and apart from the entity." Nassau County Employee "L", 345 F. Supp.2d at 304–06. In such cases, the individuals are deemed to have been "motivated by a separate, personal stake in carrying out the entity's objective." Mendoza, 2012 WL 4490539 *8 (citation omitted).

B. Disposition of the Motion

In view of the dismissal of Defendants Dormer, Webber and Fitzharris, the only individual Defendant remaining is Officer DeRose. Plaintiffs' conspiracy claims allege only that this remaining Defendant conspired with his employer. The complaint cannot be read to further any plausible claim that Officer DeRose was acting outside of the scope of his employment or in furtherance of a personal motive. Accordingly, any claims of conspiracy against the Defendants that remain are plainly barred by the intracorporate conspiracy doctrine, and are therefore dismissed.

CONCLUSION

For the reasons set forth above, the court grants Defendants' motion to dismiss all claims against Defendants Dormer, Webber and Fitzharris. The court further dismisses all claims of conspiracy. If they have not already done so, counsel are directed to contact the assigned

Magistrate Judge for the purpose of entering into an appropriate discovery schedule. The Clerk of the Court is directed to terminate the motion to dismiss appearing a docket entry number 14.

SO ORDERED.

s/ Leonard D. Wexler
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
      May    , 2013